Chester Rothstein (CR 1417)
Neil M. Zipkin (NZ 4718)
Michael P. Kenney (MK 0740)
Holly Pekowsky (HP 5034)
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, New York 10016
(212) 336-8000



Attorneys for Plaintiff
Prime Time Toys, Ltd.



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - -x

PRIME TIME TOYS, LTD.,

                  Plaintiff

         v.

MANLEY TOY DIRECT, LLC; MANLEY TOY
QUEST, INC. and J.C. PENNEY, INC.,

              Defendants.

- - - - - - - - - - - - - - - - - - - -x

Civil Action No.: 08 CV ___ ( )
ECF Case

## COMPLAINT

Prime Time Toys, Ltd. (hereinafter referred to as "Prime Time") through its

attorneys, complaining of Manley Toy Direct, LLC; Manley Toy Quest, Inc.; and J.C.

Penney, Inc. (hereinafter referred to collectively as "Defendants"), alleges as follows:

### THE PARTIES

1.     Plaintiff Prime Time is a corporation duly organized and existing

under the laws of Hong Kong, having offices and places of business at Suite 5,2/F,

Kwong Sang Hong Centre, Kwun Tong, Hong Kong and 15 East Main Street, Denville, NJ 07834. Prime Time is transacting and doing business within this judicial district.

2.    Upon information and belief, defendant Manley Toy Direct, LLC (hereinafter "Manley") is a corporation organized and existing under the laws of the State of Iowa, having a principal office at 1800 North Ninth Street, Indianola, Iowa 50125.

3.    Upon information and belief, Manley annually participates as an exhibitor at the Toy Industry Association, Inc. (hereinafter "TIA"), Toy Fair held at the Jacob Javits Center on 11th Avenue between West 34th Street and West 39th Street. On information and belief, Manley offers for sale and sells toys at the TIA Toy Fair. Manley was a registered exhibitor at the 2008 TIA Toy Fair held in Manhattan from February 17-20, 2008 and, on information and belief, occupied booth number 5317. Attached as Exhibit A is a true and correct copy of Defendants's exhibitor entry from the TIA website for the 2008 TIA Toy Fair.

4.    Upon information and belief, defendant Manley Toy Quest, Inc. (hereinafter "Toy Quest") is a division of Manley and is a corporation organized and existing under the laws of the State of California, having a principal office at 2228 Barry Avenue, Los Angeles, CA 90064.

5.    Upon information and belief, Manley and Toy Quest sell a water slide product available from various parties for purchase on the internet and delivery in this judicial district which infringes the trademark rights of Prime Time. A true and

correct print-out of a web page offering the Manley and Toy Quest water slide product utilizing the Infringing Mark is attached hereto as Exhibit G.

6.     Upon information and belief, defendant J.C. Penney, Inc., (hereinafter "J.C. Penney") is a corporation organized and existing under the laws of the State of Delaware, having a principal office at 6501 Legacy Drive, Plano, Texas 75024 and a place of business at Bay Plaza Mall, 100 Baychester Ave, Bronx, NY 10475.

7.     This is an action at law and in equity to remedy acts of, inter alia, (i) patent infringement in violation of patent laws of the United States, 35 U.S.C. §100 *et seq.*; (ii) trademark infringement under 15 U.S.C. §1114(1); (iii) false designation of origin under 15 U.S.C. §1125(a); and (iv) unfair competition under New York Business Law §360-1. This Court has jurisdiction over these claims pursuant to 28 U.S.C. §§1331 and 1338 and Rule 13 of the Federal Rules of Civil Procedure.

8.     By way of example only and without limitation, upon information and belief, Manley has directly and/or indirectly, through the internet, convention participation, distributors, retailers, an agent and/or otherwise, offered for sale, sold and/or delivered toys, including within the State of New York and this judicial district.

9.     By way of example only and without limitation, upon information and belief, Manley has directly and/or indirectly, through the internet, convention participation, distributors, retailers, an agent and/or otherwise, offered for sale, sold and/or delivered toys, including within the State of New York and this judicial district, which are a tortious infringement of the patent and/or trademark rights of Prime Time.

10.    On information and belief, Manley derives substantial revenue from interstate commerce.

11.    The aforementioned actions subject Manley to personal jurisdiction under New York's "long arm" statute, C.P.L.R. §302, and the exercise of such jurisdiction comports with due process.

12.    More specifically, upon information and belief, the aforementioned acts constitute Manley transacting business within the State of New York, contracting to supply goods in the State of New York and/or committing a tortious act outside the State of New York, i.e. patent and/or trademark infringement, causing injury to person or property within the State of New York with the expectation or reasonable expectation that the tortious act will have consequences in the State of New York and the cause of action arose, in part, from such acts.

13.    This Court has personal jurisdiction over defendant Manley under Rule 4 of the Federal Rules of Civil Procedure, in that Manley has committed acts of patent and trademark infringement having effects within the State of New York and this judicial district.

14.    By way of example only and without limitation, upon information and belief, Toy Quest has directly and/or indirectly, through the internet, convention participation, distributors, retailers, an agent and/or otherwise, offered for sale, sold and/or delivered toys, including within the State of New York and this judicial district.

15.     By way of example only and without limitation, upon information and belief, Toy Quest has directly and/or indirectly, through the internet, convention participation, distributors, retailers, an agent and/or otherwise, offered for sale, sold and/or delivered toys, including within the State of New York and this judicial district, which are a tortious infringement of the patent and/or trademark rights of Prime Time.

16.     On information and belief, Toy Quest derives substantial revenue from interstate commerce.

17.     The aforementioned actions subject Toy Quest to personal jurisdiction under New York's "long arm" statute, C.P.L.R. §302, and the exercise of such jurisdiction comports with due process.

18.     More specifically, upon information and belief, the aforementioned acts constitute Toy Quest transacting business within the State of New York, contracting to supply goods in the State of New York and/or committing a tortious act outside the State of New York, i.e. patent and/or trademark infringement, causing injury to person or property within the State of New York with the expectation or reasonable expectation that the tortious act will have consequences in the State of New York and the cause of action arose, in part, from such acts.

19.     This Court has personal jurisdiction over defendant Toy Quest under Rule 4 of the Federal Rules of Civil Procedure, in that Toy Quest has committed acts of patent and trademark infringement having effects within the State of New York and this judicial district.

391340.2

20.    By way of example only and without limitation, upon information and belief, J.C. Penney has directly and/or indirectly, through the internet, retailers, an agent and/or otherwise, offered for sale, sold and/or delivered toys, including within the State of New York and this judicial district.  J.C. Penney has numerous retail locations within this judicial district, including at Bay Plaza Mall, 100 Baychester Ave, Bronx, NY 10475.

21.    The aforementioned subject J.C. Penney to personal jurisdiction under New York's "long arm" statute, C.P.L.R. §302, and the exercise of such jurisdiction comports with due process.

22.    More specifically, the aforementioned acts constitute J.C. Penney transacting business within the State of New York and contracting to supply goods in the State of New York.

23.    This Court has personal jurisdiction over defendant J.C. Penney under Rule 4 of the Federal Rules of Civil Procedure, in that J.C. Penney is doing business in the State of New York and this judicial district and has committed acts of patent and trademark infringement having effects within the State of New York and this judicial district.

24.    Venue is proper pursuant to 28 U.S.C. §§1391 and 1400(a).

## BACKGROUND

25.    Prime Time is engaged, *inter alia*, in the design, manufacture, marketing, distribution and sale of toys.  Prime Time sells toys to retailers and distributors.

26.    Prime Time currently sells in the United States a toy under the trademark "MAX LIQUIDATOR".  A true and correct copy of packaging material for Prime Time's MAX LIQUIDATOR is attached as Exhibit B.

27.    On October 16, 2007, the U.S. Patent and Trademark Office issued U.S. Patent No. 7,281,642 B2, which is entitled "SQUIRTING TOY" (hereinafter "the '642 Patent").  The '642 Patent is valid and subsisting and is entitled to a presumption of validity under 35 U.S.C. §282.  A true and correct copy of the '642 Patent is attached as Exhibit C.

28.    Prime Time is the sole owner of the '642 Patent.

29.    MAX LIQUIDATOR is a commercial embodiment of the '642 Patent.

30.    Every MAX LIQUIDATOR sold by Prime Time in the United States has been marked "U.S. Patent No. 7,281,642" since shortly after issuance of the '642 Patent.

31.    Upon information and belief, Defendants sell, manufacture, offer for sale and/or import in or into the United States a toy under the trademark "BANZAI HYDRO CANNON".  A true and correct copy of the packaging of the BANZAI HYDRO

CANNON is attached as Exhibit D. Hereinafter the toy pictured in Exhibit D shall be referred to as the "BANZAI HYDRO CANNON".

32.    The BANZAI HYDRO CANNON infringes the '642 Patent.

33.    On information and belief, Defendants have sold, offered to sell or imported in or into the United States the BANZAI HYDRO CANNON with knowledge of the '642 Patent and that the BANZAI HYDRO CANNON is an infringement of the '642 Patent.

34.    Upon information and belief, Defendants' commercial activities relating to the making, using, offering for sale, selling, and/or importing into the United States the BANZAI HYDRO CANNON have continued and are continuing with knowledge of the '642 Patent, in spite of the objectively high likelihood that Defendants' actions constitute infringement of the '642 Patent. These commercial activities are, at a minimum, in reckless disregard of Prime Time's rights under the '642 Patent. Such acts of infringement have therefore been intentional, deliberate and willful.

35.    Prime Time is the owner of the well known SPLASH BOMBS trademark in connection with high quality toys, namely, balls having a liquid absorbing center, and related products, including a disc-shaped toy with a liquid absorbing center, and a package containing the aforementioned balls and disc-shaped toy (the "SPLASH BOMBS Mark"), and has been using the SPLASH BOMBS Mark continuously since at least as early as November 17, 1993. Prime Time's toys offered under the SPLASH

BOMBS Mark have been extensively promoted and advertised, and have achieved widespread recognition from the trade and purchasing public.

36.     Toys sold under the SPLASH BOMBS Mark have come to be known to the purchasing public throughout the United States as representing high-quality toys. As a result thereof, the SPLASH BOMBS Mark and the goodwill associated therewith are of inestimable value to Prime Time.

37.     The SPLASH BOMBS Mark has been widely copied by infringers and Prime Time has vigilantly enforced its rights against such infringers.

38.     By virtue of the wide renown acquired by toys sold under the SPLASH BOMBS Mark, the SPLASH BOMBS Mark has developed a secondary meaning and significance in the minds of the purchasing public, and toys sold under such Mark are immediately identified by the purchasing public with Prime Time.

39.     Prime Time's SPLASH BOMBS Mark is the subject of incontestable U.S. Registration No. 2,176,591 of July 28, 1998 for the mark SPLASH BOMBS covering toys, namely, balls having a liquid absorbing center. A copy of the Certificate of Registration is annexed hereto as Exhibit E.

40.     On information and belief, long after Prime Time's adoption and use of the SPLASH BOMBS Mark, long after the SPLASH BOMBS Mark achieved widespread commercial recognition, and long after Prime Time obtained a federal registration for the SPLASH BOMBS Mark, Manley and Toy Quest, without Prime Time's authorization or

consent, began to use the trademark SPLASH BOMB (the "Infringing Mark") in connection with toys.

41.     On information and belief, Manley and Toy Quest use the Infringing Mark in connection with a package of balls and disc-shaped toy, each having a liquid absorbing center. A true and correct picture of a Manley and Toy Quest product utilizing the Infringing Mark is attached hereto as Exhibit F.

42.     On information and belief, Manley and Toy Quest use the Infringing Mark in connection with other toys, including a water slide. A true and correct picture of a Manley and Toy Quest water slide product utilizing the Infringing Mark is attached hereto as Exhibit G.

43.     Upon information and belief, Manley and Toy Quest's use the Infringing Mark in connection with water slides infringes Prime Time's trademark rights.

44.     On information and belief, Manley and Toy Quest's products sold under the Infringing Mark are offered for sale and sold through various retail stores, including stores within this judicial district, via the Internet for delivery within this judicial district and possibly through other channels of trade as well. Exhibit G was printed from an Internet retail website offering a Manley and Toy Quest water slide bearing the Infringing Mark.

45.     On or about May 21, 2007, Prime Time sent SLB Toys USA, Inc. ("SLB") and Toy Quest a notice letter advising Toy Quest of Prime Time's rights in the SPLASH BOMBS Mark and objecting to Toy Quest's use of the Infringing Mark.

391340.2                                    10

46.    Toy Quest and SLB responded to Prime Time's May 21, 2007 notice letter with a declaratory judgment action in United States District Court Central District of California, Western Division, Case No. CV 07-3504 GPS (AGRx)("the California Action").  Subsequent to SLB's assignment for benefit of creditors under California Law, the California Action was dismissed without prejudice.  A copy of the dismissal is attached as Exhibit H.

47.    On information and belief, due to the near identical nature of Prime Time's SPLASH BOMBS Mark and the Infringing Mark, consumers are likely to mistakenly believe that products offered for sale and sold under the Infringing Mark originate with, or are authorized or sponsored by Prime Time, which they are not.

## COUNT I

### PATENT INFRINGEMENT OF U.S. PATENT NO. 7,281,642

48.    Paragraphs 1 through 47 of this Complaint are incorporated as if set forth in their entirety here.

49.    Defendants have infringed and is still infringing the '642 Patent by manufacturing, importing, selling and/or offering for sale the BANZAI HYDRO BLASTER and/or other toys which embody the subject matter claimed in the '642 Patent.

50.    Defendants have sold, offered to sell or imported in or into the United States the BANZAI HYDRO BLASTER knowing this toy infringes the '642 Patent.

51.    Upon information and belief, Defendants' infringement of the '642 Patent is knowing and willful.

391340.2                                    11

52.    This is an exceptional case within the provisions of 35 U.S.C. §285 and, accordingly, Prime Time is entitled to an award of reasonable attorney's fees.

53.    Prime Time has suffered monetary damage as a result of Defendants' acts complained of herein, in an amount thus far not determined.

54.    Prime Time has no adequate remedy at law.

## COUNT II

### TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT

55.    Paragraphs 1 through 54 of this Complaint are incorporated as if set forth in their entirety here.

56.    Upon information and belief, the activities of Manley and Toy Quest complained of herein constitute willful and intentional infringement of the SPLASH BOMBS Mark, as such activities have the effect of creating confusion, mistake and deception.  Upon information and belief, these activities were commenced and have continued in spite of Manley and Toy Quest's knowledge that such activities are in direct contravention of Prime Time's rights.

57.    Prime Time has no adequate remedy at law and is suffering irreparable harm as a result of the acts of Manley and Toy Quest.

## COUNT III

### UNFAIR COMPETITION UNDER THE LANHAM ACT

58.     Paragraphs 1 through 57 of this Complaint are incorporated as if set forth in their entirety here.

59.     Manley and Toy Quest have used, in connection with toys, false designations of origin and false descriptions and representations, including words or other symbols, which tend falsely to describe or represent such toys and have caused such products to be sold in commerce with full knowledge or willful blindness of the falsity of such designations of origin and such descriptions and representations, all to the detriment of Prime Time.  In particular, the sale by Manley and Toy Quest of toys under the Infringing Mark constitutes the use of false descriptions and representations tending falsely to describe goods sold by Manley and Toy Quest.

60.     Prime Time has no adequate remedy at law and has suffered, is suffering and will suffer irreparable harm as a result of the aforementioned acts of Toy Quest.

## COUNT IV

### UNFAIR TRADE PRACTICES - NEW YORK GENERAL BUSINESS LAW §360-1

61.     Paragraphs 1 through 60 of this Complaint are incorporated as if set forth in their entirety here.

62.     Prime Time, on behalf of the general public as well as for itself, seeks recovery from Manley and Toy Quest for violation of New York General Business Law §360-1, et seq.

63.    By virtue of Manley and Toy Quest's unauthorized use of the SPLASH BOMBS Registered Trademarks, such use trading on the good will associated with Prime Time, Manley and Toy Quest have misled and will continue to mislead the public into assuming a connection between Plaintiff and Manley and Toy Quest's products.

64.    By falsely suggesting a connection with or sponsorship by Prime Time, Manley and Toy Quest are likely to cause public confusion constituting unfair competition within the meaning of New York Business Law §360-1.

65.    Prime Time has no adequate remedy at law and is suffering irreparable harm and damage as a result of the aforesaid acts of Manley and Toy Quest in an amount thus far not determined but believed to be in excess of One Million Dollars ($1,000,000).

66.    Upon information and belief, Manley and Toy Quest have obtained gains, profits and advantages as a result of their wrongful acts in an amount thus far not determined but believed to be in excess of One Million Dollars ($1,000,000).

## PRAYER FOR RELIEF

WHEREFORE, Prime Time prays for judgment that:

A.    This Court declares that Defendants have infringed U.S. Patent No. 7,281,642 ("the '642 Patent") and that such infringement has been willful;

B.  Defendants and their officers, agents, servants, employees and attorneys and any and all persons in active concert or participation with Defendants, be enjoined from making, using, offering for sale, selling, and/or importing into the United States toys that infringe the '642 Patent;

C.  Prime Time be awarded damages adequate to compensate Prime Time for Defendants' infringement of the '642 Patent, including Prime Time's profits lost as a result of infringement of the '642 Patent, and that the damages be enhanced due to the willfulness of the infringement, in accordance with 35 U.S.C. §284;

D.  Defendants be ordered to deliver up for destruction all toys in their possession, custody or control that infringe the '642 Patent;

E.  This case is exceptional under 35 U.S.C. §285 and that Prime Time be awarded their costs and attorney's fees, pursuant to 35 U.S.C. §285;

F.  That a permanent injunction be issued enjoining Manley and Toy Quest and their agents, servants, employees and attorneys and those persons in active concert or participation with them:

A.  From using the Infringing Mark, the SPLASH BOMBS Mark or any mark confusingly similar thereto in connection with the sale of any goods or the rendering of any services;

B.     From using any logo, trade name, trademark or service mark which may be calculated to falsely represent or which has the effect of falsely representing that the services or products of Manley or Toy Quest are sponsored by, authorized by or in any way associated with Prime Time; and

C.     From otherwise unfairly competing with Prime Time;

G.     That Manley and Toy Quest be ordered to deliver up to Prime Time for destruction all labels, stickers, signs, prints, packages, wrappers, receptacles, advertisements and other written or printed material in its possession, custody or control which bear the Infringing Mark, and that Manley and Toy Quest be ordered to deliver up to Prime Time for destruction all plates, molds, matrices and other means of making the aforesaid written or printed materials;

H.     That Manley and Toy Quest be directed to file with the Court and serve upon Prime Time, within thirty (30) days after service of the injunction upon Manley and Toy Quest, a report in writing and under oath, setting forth in detail the manner and form which Manley and Toy Quest has complied with the aforesaid injunctive relief;

I.     That Manley and Toy Quest be required to account to Prime Time for all profits resulting from Manley and Toy Quest's infringing

activities and that such award of profits to Prime Time be increased by the Court as provided for under 15 U.S.C. §1117;

J.      That Manley and Toy Quest be required to pay to Prime Time such actual damages as Prime Time has sustained in consequence of the acts of Manley and Toy Quest complained of herein, and that any such monetary award be enhanced pursuant to the provisions of 15 U.S.C. §1117;

K.      That Prime Time have a recovery from Manley and Toy Quest of the costs of this action and Prime Time's reasonable counsel fees pursuant to 15 U.S.C. §1117;

L.      That Prime Time have restitution from Toy Quest of all income, profits, and other benefits resulting from Toy Quest's unfair trade practices, under New York General Business Law §360-1, et seq.; and

M.      Prime Time be awarded such other and further relief as the Court deems just and equitable.

### Jury Demand

Prime Time hereby demand a trial by jury as to all issues so triable.

Respectfully submitted,

AMSTER, ROTHSTEIN & EBENSTEIN, LLP
90 Park Avenue

New York, New York  10016
Telephone No.: (212) 336-8000

Attorneys for Prime Time Toys, Ltd.

Dated:   March 5, 2008              By:_____
                                        Neil M. Zipkin (NZ 4718)
                                        Chester Rothstein (CR 1417)
                                        Michael P. Kenney (MK 0740)
                                        Holly Pekowsky (HP 5034)

# Exhibit A

 

**Toy Industry** Association, Inc.



FEBRUARY
NEW YORK

WELCOME

**EXPO HALL**

 Floor Plan

 Flash Floorplan

 Exhibitor Search

**EXHIBITOR LOGIN**

**Print this page**

PRINT THIS PAGE

---

### Manley Toy Direct
Booth/Room # 5317 Map It

RICHARD TOTH
1800 N 9th St.
Indianola, IA  50125-4005
United States
Phone: 800-767-9998
Email: INFO@manleytoy.com
URL www.manleytoy.com

Lines Represented:

**Product Lines:**
Plush Products, Novelties, Party items

**Categories**
All
- Novelties
- Party, Holiday and Seasonal Goods
- Plush
- Rack Merchandise

<< Previous | Back to the Search | Next >>

▲TOP

Copyright 2003, a2z, Inc. All rights reserved.



powered by



# Exhibit B





# Exhibit C

US007281642B2

(12) **United States Patent**
Orlowski

(10) Patent No.: **US 7,281,642 B2**
(45) Date of Patent: **Oct. 16, 2007**

(54) **SQUIRTING TOY**

(75) Inventor: **Boguslaw Orlowski**, Oceanside, CA (US)

(73) Assignee: **Prime Time Toys, Ltd.**, Kwun Tong (HK)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 219 days.

(21) Appl. No.: **10/942,326**

(22) Filed: **Sep. 16, 2004**

(65) **Prior Publication Data**

US 2006/0060604 A1    Mar. 23, 2006

(51) **Int. Cl.**
*A63H 3/18* (2006.01)
*G01F 11/00* (2006.01)
*A62C 31/02* (2006.01)

(52) **U.S. Cl.** .......................... 222/79; 222/409; 239/394

(58) **Field of Classification Search** .................. 222/79, 222/409; 446/153, 473; 482/55, 111; 92/249
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

213,050 A     3/1879   Lewis

| | | |
|---|---|---|
| D26,839 S | 3/1897 | Lines |
| 1,031,526 A | 7/1912 | Cloud, Jr. |
| 1,394,456 A | 10/1921 | Wanat |
| 2,573,375 A | 10/1951 | Winstead |
| D240,130 S | 6/1976 | Folke |
| 4,597,527 A | 7/1986 | Sands |
| 4,627,796 A | 12/1986 | Moore |
| 5,009,413 A | 4/1991 | Allen |
| 5,199,114 A | 4/1993 | Christopher |
| 5,231,951 A * | 8/1993 | Tagar et al. ............... 114/345 |
| 5,266,069 A * | 11/1993 | Thorne ...................... 482/111 |
| 5,928,053 A | 7/1999 | Henderson |
| 5,992,697 A | 11/1999 | James |

* cited by examiner

*Primary Examiner*—Gregory L. Huson
*Assistant Examiner*—Kristie A. Mahone
(74) *Attorney, Agent, or Firm*—Amster, Rothstein & Ebenstein

(57) **ABSTRACT**

A squirting toy is comprised of a cylindrical housing and a piston that slides within to force water into or out of the housing via a hole therein. The housing is encased within a polyethylene closed cell foam shell. The shell is non-absorbing, so that the foam remains buoyant and keeps the gun afloat indefinitely when left in water. The foam is soft, so that the gun is not a safety hazard when left floating in a swimming pool.

**13 Claims, 4 Drawing Sheets**





*Fig.1.*

*Fig.2.*



Fig.3.



*Fig.4.*



*Fig. 5.*

US 7,281,642 B2

<table>
<tr><td>1</td><td>2</td></tr>
</table>

## SQUIRTING TOY

### FIELD OF THE INVENTION

The present invention is a water squirting apparatus for use at play. More specifically, it is a soft floating tubular piston type squirt gun for use such as in a swimming pool or swimming area by participants in or adjacent to the water.

### BACKGROUND AND OBJECTS OF THE INVENTION

Squirt guns are well known in many forms in the prior art. Numerous squirt guns and squirting toys are made and have been made over the years for use by persons while swimming in or standing adjacent to a swimming pool, which are adapted to quickly take in water from the swimming pool for squirting. One such toy is called Water Stix™ and is sold by Hearthsong Inc. This toy, representative of many such squirting toys, is basically comprised of a housing having a nozzle at its squirting end. A piston, which includes a graspable handle, is adapted to slide within the housing so that, when the nozzle end of the housing is submerged in the pool and the piston is pulled backwards, water is drawn into the housing through the nozzle. And when the piston is subsequently forced forwardly, that water is forced from the housing, through the nozzle, towards a target, in a powerful stream.

Additionally, many squirt guns of the prior art are constructed in a manner that entraps air and thereby inadvertently enables those guns to partially float in water. The degree of such buoyancy is relative to the amount of water that has been taken into the gun and the longevity of such buoyancy is relative to the to the amount of air leakage from the housing.

There are also floating toy "swimming noodles" in the prior art, which are made of resilient floating closed-cell polymer foam. These toys are used to provide buoyancy to the user while swimming. Because these toys are often left floating in the pool when not in use, their softness eliminates the safety threat that they would otherwise pose.

It is therefore an object of the present invention to provide an improved squirting toy that floats fully atop the surface of the water, whether filled with or empty of water.

It is a further object to provide a soft squirting toy that is safer that squirting toys of the prior art.

It is a further object to provide a squirting toy that is both buoyant and soft.

It is a further object to provide such a squirting toy that has a similar appearance to a "swimming noodle".

Further objects and advantages of the invention will be apparent upon a review of the following description and drawings of the invention, including the preferred embodiment thereof.

### SUMMARY OF THE INVENTION

The present invention comprises a squirting toy that is housed within a polyethylene (PE) closed cell foam shell. The closed cell shell is non-absorbing, so that the foam remains buoyant and keeps the gun afloat indefinitely. The foam is soft, so that the gun is not a safety hazard when left floating in a swimming pool. In the preferred embodiment, the squirting toy is comprised of a cylindrical housing and a piston that slides within to force water into or out of the housing via a hole therein. The foam shell of the preferred

embodiment is similar in size and shape to a "swimming noodle", and is therefore more attractive to a child who is familiar with such.

A more complete understanding of the invention will be realized upon review of the following description and drawings of the Preferred embodiment of the invention.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is an action view of a squirting toy according to the preferred embodiment of the invention showing water being expelled there-from.

FIG. 2 is a cross-sectional view through the toy of FIG. 1 in its retracted/empty state.

FIG. 3 is an enlarged partial section of the toy of FIG. 1 floating in water,

FIG. 4 is an action cross-sectional view showing the intake of water into the toy of FIG. 1, and

FIG. 5 is an action cross-sectional view showing the expulsion of water from the toy of FIG. 1.

### DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

The Preferred embodiment of the invention is shown in FIGS. 1 though 5, where there is depicted a toy 100 for squirting a water stream 102, and which is adapted to float on the water surface 104.

The toy comprises a rigid tubular housing 106 that encloses a hollow cylindrical chamber 110. The forward end 112 of the tubular housing is closed except for a small hole 114. Piston 116 slides longitudinally within chamber 110 and is sealed against the cylindrical inner surface 120 of the chamber by o-ring 122, which is seated within groove 124 of the piston. The piston separates the chamber 110 into a forward portion 110A and a rear portion 110B. The piston 116 is rigidly connected to shaft 124 at the forward end 126 thereof. Slide bushing 128 supports shaft 124 at the rear end 130 of the tubular housing 106, while allowing longitudinal movement relative thereto. Handle portion 132 is rigidly connected to shaft 124 at the rearward end 134 thereof. Expansion of the handle portion 132 relative to the tubular housing 106, while hole 114 is below the water surface 104, as depicted in FIG. 4, causes water to be inhaled into the expanding forward chamber portion 110A, through hole 114. Subsequent retraction of the handle portion 132 relative to the tubular housing 106 causes that water to be exhaled through hole 114 in a powerful stream 102.

Tubular shell 138, preferably made of closed-cell polyethylene foam, surrounds tubular housing 106, to provide both a soft protective surface and buoyancy. Other materials may be substituted for polyethylene foam, such as ethylene vinyl acetate closed-cell foam.

Handle portion 132 also includes handle shell 140, which is preferable made of the same foam, and is rigidly connected shaft 124 by means of support bushings 144 and 146. Alternatively, other materials having sufficient buoyancy, softness, and water impermeability, such as polyurethane foam, may be used for both the tubular and handle shells. Or the shells could instead be replaced by blow molded or rotationally molded air-filled cylindrical bladders. When the handle portion is retracts as in FIG. 2, the shells create a similar appearance and feel to those of a common "swimming noodle".

It will be appreciated by those skilled in the applicable arts that the foregoing is merely one of many possible

US 7,281,642 B2

3

embodiments of the invention, and that the invention should therefore only be limited according to the following claims.

I claim:

1. An expandable and contractible toy for receiving and storing water when disposed towards an expanded configuration, and squirting water when disposed towards a contracted configuration, the toy being encased in a soft material along its entire length when in the contracted configuration, the soft material having a buoyancy sufficient to keep the toy afloat in water when the toy is filled to its maximum capacity with water, the toy having a cylinder shape and a uniform cross section along its entire length when in the contracted configuration.

2. The toy of claim 1 wherein said soft material is closed-cell polymer foam.

3. The toy of claim 1 wherein said material is closed-cell polyethylene foam.

4. The toy of claim 1 wherein said material is closed-cell ethylene vinyl acetate foam.

5. A toy for receiving, storing, and squirting water and comprising a tubular housing defining a chamber for receiving and storing the water, said tubular housing having a first end and a second end, said chamber having means for expansion or contraction and said housing having a hole to allow communication between said chamber and the outside environment, whereby said toy is adapted to inhale the water through said hole while said hole is submerged during said expansion of said chamber, and said toy is adapted to exhale the water through said hole during said contraction of said chamber, and further comprising an outer shell comprised of a soft material that has a buoyancy sufficient to keep the toy afloat in water when said expanded chamber is full of water, the outer shell covering the entire tubular housing from the first end to the second end to provide the toy with a cylinder shape, said tubular housing having a uniform cross-section along its entire length when said chamber is fully contracted.

6. The toy of claim 5 wherein said soft material is closed-cell polymer foam.

7. The toy of claim 5 wherein said material is closed-cell polyethylene foam.

4

8. The toy of claim 5 wherein said material is closed-cell ethylene vinyl acetate foam.

9. The toy of claim 5 wherein said chamber comprises a cylinder and said means for expansion and contraction of said chamber is a piston sealingly engaging said chamber's interior cylindrical surface, said piston adapted for longitudinal movement within and relative to said cylinder to alternately expand and contract the volume within the chamber.

10. The toy of claim 5 wherein said soft material is closed-cell polymer foam.

11. The toy of claim 5 wherein said material is closed-cell polyethylene foam.

12. The toy of claim 5 wherein said material is closed-cell ethylene vinyl acetate foam.

13. A toy for receiving, storing, and squirting water and comprising a tubular housing defining a chamber for receiving and storing the water, said tubular housing having a first end and a second end, said chamber having means for expansion or contraction and said housing having a hole to allow communication between said chamber and the outside environment, whereby said toy is adapted to inhale the water through said hole while said hole is submerged during said expansion of said chamber, and said toy is adapted to exhale the water through said hole during said contraction of said chamber, and further comprising an outer shell comprised of a soft material that has a buoyancy sufficient to keep the toy afloat in water when said expanded chamber is full of water, said outer shell covering the tubular housing from adjacent the first end to adjacent the second end, said chamber comprising a cylinder and said means for expansion and contraction of said chamber being a piston sealingly engaging said chamber's interior cylindrical surface, said piston adapted for longitudinal movement within and relative to said cylinder to alternately expand and contract the volume within the chamber, said tubular housing having a uniform cross-section along its entire length when said chamber is fully contracted.

* * * * *

# Exhibit D



Exhibit E

Int. Cl.: 28

Prior U.S. Cls.: 22, 23, 38 and 50

**United States Patent and Trademark Office**

Reg. No. 2,176,591

Registered July 28, 1998

## TRADEMARK
## PRINCIPAL REGISTER

## SPLASH BOMBS

PRIME TIME TOYS LTD. (HONG KONG COR-
   PORATION)
SUITE 5, 2/F, KWONG SANG HONG CENTRE
151 HOI BUN ROAD
KWUN TONG, HONG KONG

FOR: TOYS, NAMELY, BALLS HAVING A
LIQUID ABSORBING CENTER, IN CLASS 28
(U.S. CLS. 22, 23, 38 AND 50).

FIRST USE 11–17–1993; IN COMMERCE
11–17–1993.
   NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE "SPLASH", APART FROM THE
MARK AS SHOWN.

   SER. NO. 75–296,306, FILED 5–22–1997.

ALBERT ZERVAS, EXAMINING ATTORNEY

# Exhibit F



# Exhibit G



Find the right product for you ... guided by actual buyers!   how it works »

RSS  Print



## Manley Splash Bomb Water Slide by Banzai Reviews

**Average Customer Rating:** (based on 5 reviews)

3.4 stars vs. 4.0 category average

Read all reviews

**Recommendations by Profile:**

| | | |
|---|---|---|
| Working parent | (0 of 2) | 0% |
| All Recommenders | | 33% |

Image provided by Toys R Us      View larger

Got a related image or video? Share it.

## Where to Buy

All of the merchants in our partner network are currently **out of stock** of this product. We recommend that you try one of these affiliate merchants:

   Search ebay.com

## Description

Provided by Toys R Us

14' Inflatable Sliding Ramp and Splash Pool. Splash into fun with the ultimate waterslide and pool combo, the Splash Bomb Water Slide by Banzai! Grab your body board; get a running start and dive onto the awesome elevated waterslide. Make waves when you plunge into the massive splash pool. The inflated slide and pool mean no sliding on the hard ground. It's the greatest thrill of the summer! Waterslide safety tips to prevent injuries in this pool: Drowning Risk - Children are at high risk of drowning. Keep children in direct sight and stay close whenever they are in OR near this waterslide. For optimum safety, empty pool area of water when not in use. Keep pets away - Don't let

Show More »

### See Similar Top-Rated Products

 **4.0 stars**
read 7 reviews »

**Manley Fall Sidewinder Falls by Banzai**

 **1.0 stars**
read 2 reviews »

**Manley Aqua Blast Dual Racing Slide by Banzai**

 **5.0 stars**
read 2 reviews »

**Manley The Plunge by Banzai**

### See Similar Categories

Pool Master Floats, Toys & Games

Swimways Floats, Toys & Games

Lillian Vernon Floats, Toys & Games

## 5 Customer Reviews of the Manley Splash Bomb Water Slide by Banzai in Floats, Toys & Games

Write a Review

Displaying Reviews 1 to 5 of 5 Results    Show 10        Sort by Newest first

**richardssa**
arkansas

**I am:**
Working Parent
Stay At Home Parent

**not worth it**

Jul
**27**
2007

**Cons:** Flimsy

**Best Uses:** Outdoor

**Bottom Line:** No, I would not recommend this to a friend

My kids used it for one weekend and now it has a hole in the landing pad so the slide hurts.

Reviewed at **ToysЯus**

Price: $29.99

*Was this review helpful to you? Yes | No You may also flag this review.*
*Post this review to your blog*

---

**marie**
massachusetts

**I am:**
Working Parent

**excellent**

Jul
**18**
2007

**Pros:** Durable, Fun, Easy Assembly

**Cons:** None

**Best Uses:** Group Activity, Outdoor

**Bottom Line:** No, I would not recommend this to a friend

my kids loved this. even i have to admit it was literally a blast! its durable and it keeps the kids busy for hours! it a cool way to have fun!

Reviewed at **ToysЯus**

Price: $29.99

*Was this review helpful to you? Yes | No You may also flag this review.*
*Post this review to your blog*

---

**Nbro**
Wingdale, NY

[1 of 1 customers found this review helpful]

**Absolutely Awesome!**

Jul
**18**
2007

**Pros:** Fun, Great Value, Durable, Interactive, Easy Assembly

**Bottom Line:** Yes, I would recommend this to a friend

My 4 year old absolutely loves this slide. No complaints "other than" I wish the slide connected to the pool in another way other than 3 strips of velcro. After about 2 hours of playing and getting wet, the velcro comes apart and the slide then comes apart from the pool, so you have to go and re-attach. But other than that...get it!

Reviewed at **ToysЯus**

Price: $29.99

*Was this review helpful to you? Yes | No You may also flag this review.*
*Post this review to your blog*

---

**Cammie**
SC

[1 of 1 customers found this review helpful]

**Cannonball Splash**

Jul
**17**
2007

Used 3 times before air started leaking out and
slide tipped over from water filling the sides.
Would have been alot of fun if we could have gotten more use out of it.

Reviewed at **ToysЯus**

Price: $29.99

*Was this review helpful to you? Yes | No You may also flag this review.*
*Post this review to your blog*

**thomas**
long island, ny

[0 of 1 customers found this review  helpful]

### Was great until

Was great until the sides started filling up with water. my son loved it! The
hose connection side was filling up with water, and not holding air. It wasn't
even used more than 3 times,[...]

Reviewed at **TOYS Я US**

Price: **$29.99**

*Was this review helpful to you? Yes | No You may also flag this review.*
*Post this review to your blog*

Displaying Reviews 1 to 5 of 5 Results

Page:  1

# Exhibit H



FILED
CLERK, U.S. DISTRICT COURT

FEB 1 3 2008

CENTRAL DISTRICT OF CALIF.
BY_____DEP.

1  Joshua R. Furman, Bar No. 225461
   joshua@furman.com
2  9663 Santa Monica Boulevard, No. 721
   Beverly Hills, California 90210
3  Telephone:  (310) 809-3016
   Facsimile:  (310) 861-0449
4
   *Attorney for Plaintiff and Counterclaim Defendant,*
5  SLB TOYS USA, INC. doing business as TOYQUEST
6  Lawrence Y. Iser, Bar No. 94611
   liser@kwikalaw.com
7  Gregory P. Korn, Bar No. 205306
   gkorn@kwikalaw.com
8  KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
   808 Wilshire Boulevard, 3rd Floor
9  Santa Monica, CA 90401
   Telephone: (310) 556-9800
10 Facsimile: (310) 566-9850
11 Chester Rothstein, *Pro Hac Vice*
   crothstein@arelaw.com
12 Marc J. Jason, *Pro Hac Vice*
   mjason@arelaw.com
13 AMSTER, ROTHSTEIN & EBENSTEIN LLP
   90 Park Avenue
14 New York, NY 10016
   Telephone: (212) 336-8000
15 Facsimile: (212) 336-8001
16 *Attorneys for Defendant and Counterclaimant:*
   PRIME TIME TOYS LTD.
17
18          UNITED STATES DISTRICT COURT
19          CENTRAL DISTRICT OF CALIFORNIA
20 SLB TOYS USA, INC. doing business   Case No.: CV 07-3504 GPS (AGRx)
   as TOYQUEST,
21                                     [PROPOSED] ORDER RE:
            Plaintiff,                 STIPULATION RE:
22                                     WITHDRAWAL OF ATTORNEY'S
       vs.                             APPLICATION TO WITHDRAW
23                                     AND DISMISSAL
   PRIME TIME TOYS LTD., a Hong
24 Kong Corporation; and DOES 1–10,
   inclusive,
25
            Defendants.
26
27 AND RELATED COUNTERCLAIMS.
28

                    [Proposed] Order re: Stipulation re: Dismissal

1       IT IS HEREBY ORDERED based on the stipulated request filed at the time

2 of the lodging of this Order:

3       1.    That the application of Joshua R. Furman to withdraw as attorney for

4 SLB is withdrawn without prejudice;

5       2.    That the Complaint of SLB be dismissed in its entirety without

6 prejudice;

7       3.    That the Counterclaims of Prime Time be dismissed in their entirety

8 without prejudice; and

9       4.    All parties are to bear their own costs.

10

11    **IT IS SO ORDERED:**

12

13

14 Dated: ___2/13/08___      By: _George P. Schiavelli_

15                 Hon. George P. Schiavelli

16                 Judge of the U.S. District Court

17

18

19

20

21

22

23

24

25

26

27

28

[Proposed] Order re: Stipulation re: Dismissal - 1